**Brian BURNS, Plaintiff, Appellant, and Cross–Appellee,**

v.

**CANNONDALE BICYCLE COMPANY and The Bicycle Center, Defendants, Appellees, and Cross–Appellants.**

No. 920708–CA.

Court of Appeals of Utah.

May 27, 1994.

---

Edward T. Wells, Salt Lake City, for appellant.

Darwin C. Hansen, Randall D. Lund, and Gary B. Ferguson, Salt Lake City, for appellees.

Before DAVIS, JACKSON and ORME, JJ.

## OPINION

ORME, Associate Presiding Judge:

Plaintiff Brian Burns appeals the trial court's grant of summary judgment in favor of defendants Cannondale Bicycle Company and The Bicycle Center on his products liability claim. Burns claims that the trial court erred in granting summary judgment because there was a material issue of fact as to whether or not the brakes on his bicycle were defective. We affirm the trial court's judgment.

## FACTS

In July of 1986, plaintiff Burns purchased a Cannondale bicycle from The Bicycle Center in Salt Lake City, Utah. On August 16, 1986, Burns was riding the bicycle when the bike suddenly stopped, throwing Burns over the handle bars and thereby injuring him.

A few weeks after the accident, Burns asked his employee, Todd Bradford, to return the bicycle to The Bicycle Center for repairs and/or a determination of what had caused the bicycle to suddenly stop. Bradford testified in his deposition that when he delivered the bicycle to Phillip Blomquist, owner of The Bicycle Center, he told Blomquist that it was broken. As Bradford recollected, Blomquist said something like "Oh, yeah, it is, I'll take care of it." Bradford left the bike with Blomquist for whatever repair or adjustment needed to be made.

When The Bicycle Center had finished with the bike, Burns asked a friend, Bradley Peterson, to pick it up. Peterson testified in his deposition that when he picked up the bike, Blomquist told him "that there was a problem with the brake" and "that they had to replace something."

In contrast, while Blomquist admitted in his deposition that he received the bike for repair, he claimed that nothing was wrong with it and that no part was replaced. According to Blomquist, he "took the brake cable apart, suspecting that could have been [the] problem." He then "regreased the cable, put it back together." However, Blomquist stated that "[t]here were no problems at that time, there were no problems, really, when I took it apart."

While apparently not contemplating suit at the time he returned the bicycle to The Bicycle Center, Burns stated that he later changed his mind after seeing a television report on "that big P.I. attorney out of San Francisco," Melvin Belli. Accordingly, on August 16, 1989, exactly three years after the accident, Burns filed suit against Cannondale Bicycle Company and The Bicycle Center for breach of the implied warranty of merchantability, breach of certain express warranties, and products liability. He also asserted a claim against The Bicycle Center for negligent assembly. The parties participated in discovery from the time the complaint was filed until June 19, 1992, at which point discovery was cut off by the court.

Following Blomquist's deposition in April of 1990, Burns, Bradford, and Peterson all paid a visit to Blomquist at The Bicycle Center around the beginning of 1991. At that time, according to Burns's deposition, Blomquist stated that the accident was the bike's fault. According to Bradford's deposition, Blomquist stated that he would not have a problem telling his insurance company "that it probably could have been or was most probably the bike's malfunction" that caused the accident. Finally, Peterson stated that his "impression" from the conversation was that Blomquist "couldn't believe that things hadn't been resolved by this time, and that, you know, there was a clear-cut problem with the bicycle."

In his complaint, Burns alleged the accident was caused when "the brake spring for the front brakes of the bicycle popped off, causing the brakes to clamp down on the front tire of the bicycle." In an attempt to determine what effect a dislodged spring would have on the bicycle, Burns and Bradford consulted an expert, who, according to Bradford's deposition, stated that if the spring were to somehow release, it would actually have the opposite effect of that alleged by Burns. According to Burns's expert, the loss of the spring would cause the brake pads to release away from the tire rim rather than cause the brakes to engage. This opinion was corroborated by defendants' experts, who also testified, by affidavit, that such a malfunction of the brake would not cause the bike to stop suddenly.

■ Defendants subsequently moved for summary judgment, claiming that Burns, as a matter of law, could not prevail on his claims because he lacked evidence of a defect that could have caused the accident. Burns, admitting that he lacked such evidence, claimed that the existence of such a defect could be inferred by the fact finder. Alleging that defendants had disposed of the defective part, Burns argued that the doctrine of "spoliation of evidence" should establish the defect. Burns also claimed that Blomquist's statements constituted an admission of liability or at least created an issue of fact as to whether a causal defect existed. Rejecting Burns's arguments, the trial court granted summary judgment to defendants. The trial court concluded that Burns's inability to prove a specific defect and furnish evidence of causation made the issue of Blomquist's alleged admissions immaterial. It also concluded Burns had failed to establish a factual basis for his spoliation claim. Burns now appeals the trial court's summary judgment in favor of defendants.[1]

---

1. Defendants Cannondale Bicycle Company and The Bicycle Center cross-appeal, challenging the propriety of a protective order issued by the trial court concerning certain documents relating to Burns's chiropractic practice which were produced in the course of discovery. Defendants sought these business records to determine the validity of Burns's claim for lost income. In view of our affirmance, we need not concern ourselves with discovery difficulties raised by defendants because whether or not the documents were properly protected, defendants have prevailed and have no need to verify Burns's lost income.

Defendants' counsel nonetheless claim to need guidance on whether they have any professional responsibility to disclose to state licensing au-

## PROPRIETY OF SUMMARY JUDGMENT

At the outset we note that summary judgment is appropriate only where there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c); *Higgins v. Salt Lake County*, 855 P.2d at 233. "[I]n reviewing a grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Higgins v. Salt Lake County*, 855 P.2d 231, 233 (Utah 1993). "Because summary judgment is granted as a matter of law, we review the trial court's legal conclusions for correctness, according them no deference." *Hunsaker v. State*, 870 P.2d 893, 896 (Utah 1993). Burns claims that the trial court erred in granting summary judgment because there were material issues of fact as to whether a defect existed and whether such defect caused the accident resulting in his injuries.

## PRODUCTS LIABILITY REQUIREMENTS

■ In order to prevail on a claim for strict products liability, the plaintiff must meet a three-part test. The plaintiff must show "(1) that the product was unreasonably dangerous due to a defect or defective condition, (2) that the defect existed at the time the product was sold, and (3) that the defective condition was a cause of the plaintiff's injuries." *Lamb v. B & B Amusements Corp.*, 869 P.2d 926, 929 (Utah 1993). *See* Utah Code Ann. § 78–15–6 (1992); *Ernest W. Hahn, Inc. v. Armco Steel Co.*, 601 P.2d 152, 156 (Utah 1979).

■ Accordingly, it is not enough to simply show that the product failed. *Brooks v. Colonial Chevrolet–Buick, Inc.*, 579 So.2d 1328, 1332 (Ala.1991); *Brothers v. General Motors Corp.*, 202 Mont. 477, 658 P.2d 1108, 1109 (1983). In *Brooks*, a case similar to the instant one, the plaintiffs brought an action for products liability and negligent repair as a result of injuries sustained when their car brakes failed. 579 So.2d at 1329. However, the plaintiffs failed to allege a specific defect in either the design or the repair of the braking system, let alone explain how that defect caused the brakes to fail. *Id.* at 1330. In affirming summary judgment for defendants, the manufacturer and a repair shop, the Alabama Supreme Court noted that "[t]he fact that someone was injured while using a product does not establish that the product was unreasonably dangerous when put to its intended use." *Id.* at 1332 (citations omitted). Rather, to meet their burden of proof, the plaintiffs must provide sufficient evidence raising " 'a reasonable inference from which the fact finder may rationally conclude that plaintiff[s'] injuries and damages proximately resulted from the product's failure of performance causally related to its defective condition.' " *Id.* (quoting *Sears, Roebuck & Co. v. Haven Hills Farm, Inc.*, 395 So.2d 991, 995 (Ala.1981)).

In sum, in order to defeat defendants' motion for summary judgment, Burns must provide some *evidence* that a defect existed at the time he bought the bicycle and that the defect caused his injury. It is not enough to merely contend that a defect existed, show that an accident occurred, and assume the two are necessarily related.[2]

---

thorities evidence of an illegal fee sharing arrangement which they believe is suggested in the documents. They ask us to address this issue even if we affirm the judgment in their favor. We decline to do so. Requests for advisory opinions on counsels' ethical responsibilities are more appropriately directed to the Utah State Bar's Ethics Advisory Opinion Committee.

**2.** Burns's additional claims that defendants Cannondale Bicycle Company and The Bicycle Center breached the bike's implied warranty of merchantability and certain express warranties and that The Bicycle Center was liable under a theory of negligent repair are apparently not before us.

On appeal, Burns limits his arguments to his products liability claim, stating that "[t]he key issue before the trial court was whether a defect in Dr. Burns'[s] bicycle caused the accident." Insofar as Burns's claim for breach of the implied warranty of merchantability is concerned, no separate analysis is required since it is essentially the same as a products liability claim. *Ernest W. Hahn, Inc. v. Armco Steel Co.*, 601 P.2d 152, 159 (Utah 1979).

Burns does not challenge the propriety of the trial court's grant of summary judgment on the other two claims. This may well be a result of Burns's recognition that he cannot establish a case of negligent repair or breach of an express

## DESTRUCTION OF EVIDENCE

■ Burns admits that he cannot prove the existence of a defect. However, he claims the existence of a defect would properly be inferred if the factfinder determined The Bicycle Center disposed of a part while it had Burns's bike in for repair. Burns bases his claim on the doctrine of "spoliation of evidence," which holds that where a *party to an action* fails to provide or destroys evidence favorable to the opposing party, the court will infer the evidence's adverse content. *See Nation–Wide Check Corp. v. Forest Hills Distribs., Inc.*, 692 F.2d 214, 217–18 (1st Cir.1982); *National Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557–58 (N.D.Cal.1987). Under the spoliation doctrine, such an inference will be drawn "[w]here one party wrongfully denies another the evidence necessary to establish a fact in dispute." *Turnage*, 115 F.R.D. at 557. While Burns cites no authority demonstrating that Utah has adopted the spoliation doctrine, we conclude that it would not apply to the facts of this case in any event.

Burns alleges that a defect existed and that Blomquist discarded the part in order to hide that fact. Defendants deny there was any defective part or that any part was discarded after repairing the bicycle. However, even if such a defective part existed and was discarded, the requirements for establishing an evidentiary inference based on spoliation have not been met. First, Burns had not brought suit for his injuries, nor even notified defendants that he was considering such action, at the time the part was allegedly discarded. By his own admission, Burns did not even contemplate filing suit at that time, but only later became excited about the prospect of litigation after viewing a televised report on Melvin Belli. Thus, defendants were not parties to a lawsuit brought by Burns, nor even on notice of the impending filing of such an action, at the time the part was supposedly discarded. Second, we are not aware of any general duty requiring defendants to retain the allegedly discarded

part. Accordingly, defendants did not act wrongfully even if they did discard the part.

In sum, even assuming that a part was discarded, it cannot be inferred that the part was defective because defendants had no notice of the pendency of Burns's legal claim nor a duty to retain the part on any other basis.

## BLOMQUIST'S STATEMENTS

Burns also claims that Blomquist's alleged admissions created an issue of fact precluding summary judgment. We disagree. Condensing the varied testimony of Burns, Bradford, and Peterson set out in detail above, Blomquist allegedly admitted that there was a problem with the bike that required repair. However, Blomquist begged to differ, stating that, after disassembling the brake mechanism, he concluded that there was nothing wrong with the bike's brakes.

Admittedly there is an issue of disputed fact as to what Blomquist said or admitted to. However, only *material* issues of fact preclude summary judgment. *Horgan v. Industrial Design Corp.*, 657 P.2d 751, 752 (Utah 1982). According to the Utah Supreme Court, "the mere existence of genuine issues of fact ... does not preclude the entry of summary judgment if those issues are immaterial to resolution of the case." *Id. See Abdulkadir v. Western Pac. R.R.*, 7 Utah 2d 53, 318 P.2d 339, 341 (1957). *Cf. Reeves v. Geigy Pharmaceutical, Inc.*, 764 P.2d 636, 642 (Utah App.1988) (although otherwise reversed because of disputed facts, summary judgment was sustained as to claim with respect to which there was no *material* factual dispute). In addition, as noted by the United States Supreme Court when interpreting the federal equivalent of Rule 56 of the Utah Rules of Civil Procedure, when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case ... there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immateri-

---

warranty, and thus he has chosen to focus on his products liability claim. In any event, we do not address the propriety of summary judgment on

these claims, as they have not been briefed on appeal. *See* Utah R.App. P. 24(a)(9); *State v. Wareham*, 772 P.2d 960, 966 (Utah 1989).

al." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). *See Reeves,* 764 P.2d at 642 (citing *Celotex* ). Thus, the standard for summary judgment "mirrors the standard for a directed verdict" in that a moving party, who has otherwise made its case, is entitled to judgment as a matter of law where the "nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."[3] *Celotex,* 447 U.S. at 323, 106 S.Ct. at 2552.

■ Even the most favorable characterization of Blomquist's alleged statements does not constitute the requisite showing for strict products liability. As previously stated, a products liability claim requires proof of a specific defect, which in turn caused the plaintiff's injury. *See Lamb v. B & B Amusements Corp.,* 869 P.2d 926, 929 (Utah 1993); *Ernest W. Hahn, Inc. v. Armco Steel Co.,* 601 P.2d 152, 156 (Utah 1979). Blomquist's alleged statement that the bike "malfunctioned," or agreement that there was "a problem with the bike" or admission that "it was the bike's fault" is simply not sufficient to establish the existence of a causal defect.

Burns has not provided any evidence, expert or otherwise, as to what the defect was or how it caused his injuries. In fact, Burns's initial allegation that the brake spring came off, thereby causing the brakes to suddenly engage, was contradicted by Burns's and defendants' experts, who both stated that if the brake mechanism came apart it would cause the brakes to fail rather than engage. Burns has simply not met his burden, even at the summary judgment stage, by basing his case on the alleged admissions of Blomquist, which, even if believed to have been made, go no further than to recognize there was something wrong with the bike. *See Dutsch v. Sea Ray Boats, Inc.,* 845 P.2d 187, 191 (Okla.1992) ("mere possibility that a defect caused the injury is not sufficient"). *See also Weber ex rel. Weber v. Springville,* 725 P.2d 1360, 1367 (Utah 1986) (mere possibility of causation is not enough).

From all that appears, the accident could have resulted from Burns's own overly exuberant manipulation of the brakes; a hazard in the road; or even the post-sale tampering with, or entry of some foreign object into, the brake mechanism. *See Brothers v. General Motors Corp.,* 202 Mont. 477, 658 P.2d 1108, 1110 (1983) (if resting on circumstantial evidence, plaintiff must eliminate alternative causes; speculation not sufficient). Accordingly, even if Blomquist stated what Burns claims, it is insufficient to establish that a defect existed and that the defect caused the accident.

In sum, although there is a factual dispute over what Blomquist actually said, the issue is not material since its resolution does not affect the outcome of defendants' motions. Even if Blomquist said what Burns claims he said, defendants would still be entitled to judgment as a matter of law.

## CONCLUSION

Plaintiff Burns has failed to make a sufficient showing that a defect existed and that his injuries were caused thereby. Nor can such a defect be inferred from Burns's claim that defendants discarded a defective part since the defendants were not on notice of Burns's legal claims and under no general duty to preserve the part. While there is an issue of fact as to what Blomquist actually said, the issue is not material since Burns has failed to show the existence of a defect, and Blomquist's statements, even viewed most favorably to Burns, do not on their own establish the necessary elements of strict products liability.

Accordingly, we affirm the trial court's grant of summary judgment for defendants Cannondale Bicycle Company and The Bicycle Center.

DAVIS and JACKSON, JJ., concur.

---

**3.** Our citation to *Celotex* in this context should not necessarily be taken as approval of *Celotex*'s pronouncements regarding the quality of the evidentiary showing that must be made in order to defeat summary judgment. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325–27, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986).